JOHN G. CARPENTER, ADMINISTRATOR OF BENJAMIN L. CLARK, DECEASED, v. ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY ET AL.

(Filed 22 November, 1922.)

**1. Actions—State—Governmental Agencies—State Highway Commission —Statutes.**

The statutes creating the State Highway Commission enumerate their powers and duties in the construction, maintenance, etc., of highways for public benefit, without either expressly or impliedly giving it the right to sue and be sued, but manifestly as an agency of the State for the purpose of exercising administrative and governmental functions. Public Laws 1915, ch. 113; Public Laws 1919, ch. 189; Public Laws 1921, ch. 2, sec. 10.

**2. Same—Constitutional Law.**

A State cannot be sued in its own courts or elsewhere unless it has expressly consented to such suit, by statutes or in cases authorized by provisions in the organic law, instanced by Art. II, Const. U. S.; Art. IV, sec. 9, Const. of North Carolina.

**3. Same—Officials.**

A suit prosecuted against an officer or agent who represented the State in conduct and liability, and wherein the State is the real party whose action will be controlled by the judgment and against which relief is sought, is a suit against the State, and not against its officer or agent, whose acts are alleged to have caused the injury complained of.

**4. Same—Private Corporations.**

C. S., 1126, giving corporations the right to sue and be sued, does not apply to the State Highway Commission, a governmental agency of the State, but only to private and *quasi*-private corporations.

**5. Same—Torts.**

The principle upon which a governmental agency is not liable to an action in tort committed by its agents, rests upon public policy, and the State Highway Commission being a governmental agency, is immune from suits of this character, whether empowered by the statutes concerning it to sue and be sued or otherwise, there being no statute or constitutional provision authorizing it.

**6. Same—Principal and Agent—Private Torts.**

The principle upon which the immunity of the State from suit does not extend to its officers and agents for a trespass committed in breach of an individual's legal rights under conditions prohibited by law, though they have assumed to act by authority of the State, can have no application when the State is the real party against which the relief is sought, and the party that will be affected or controlled by an adverse judgment, if rendered.

**7. Same—Statutes—Constitutional Law.**

An officer or agent of the State is not liable to one injured by a breach of his administrative duty requiring the exercise of his judgment or discretion, when it is imposed solely for the public benefit, and he has acted within its scope without malice or corruption.

**8. Pleadings—Demurrer—Governmental Agencies—Torts.**

The plaintiff in this action sued the State Highway Commission for damages for the death of his intestate, alleged to have been caused by its failure to provide a safe place for the intestate to work in pursuance of his dangerous duties as defendant's employee: *Held*, a demurrer confined the scope of the inquiry to whether the action could be maintained against the defendant commission, in its capacity in which it was sued, if regarded as a general appearance, and was properly sustained.

**9. Summons—Service—Principal and Agent—Governmental Agencies— State Highway Commission—Actions.**

A summons served on the chairman alone, and as such of the State Highway Commission, does not present in the action the question of the individual liability of its agents or employees for a tort alleged to have been committed by them.

APPEAL by plaintiff from *Webb, J.*, at September Term, 1922, of GASTON.

The State Highway Commission demurred to the complaint. Demurrer sustained. Plaintiff appealed.

*Mangum & Denny for plaintiff.*
*Attorney-General Manning and Assistant Attorney-General Nash and W. L. Cohoon for State Highway Commission.*

ADAMS, J. The plaintiff alleges that Sam Finley, who was employed by the State Highway Commission to surface certain roads in the county of Gaston, by agreement with the Southern Railway Company, built a tank, or tanks, on the railroad's right of way in the town of Lowell within a few feet of overhead wires which were charged with an electric current of high voltage; that these tanks contained asphalt, which was to be used in surfacing the roads then in process of construction; and that the plaintiff's intestate, a road inspector in the employ of the Highway Commission, went to one of the tanks in obedience to orders given him, and mounting a ladder undertook, by means of an iron rod,

26—184

to dig or cut into the asphalt, when the rod came in contact with one of the wires and communicated the electric current to his body, causing his death. The plaintiff further alleges that the Highway Commission negligently permitted Finley to place the tanks in dangerous proximity to the wires and negligently failed to furnish for the plaintiff's intestate a safe place in which to work, or to warn him of the danger to which he was exposed.

The Highway Commission demurred on the ground that the complaint does not state a cause of action against them in that the commissioners are agents of the State engaged in the performance of a public service, and are not subject to suit for the cause alleged. The demurrer was sustained, and the plaintiff excepted and appealed.

The appeal presents the question whether the allegations in the complaint constitute a cause of action which can be maintained against the State Highway Commission in the Superior Court. It is not necessary to consider the alleged cause of action against Finley (who is named as a defendant) for the reason that Finley has never been served with process and is not in court, and because, moreover, the demurrer was filed only by the Highway Commission.

In 1915 the General Assembly established a State Highway Commission, to consist of the Governor and six others, and afterwards increased the number of commissioners, enlarged their duties, and more clearly defined their powers. Public Laws 1915, ch. 113; Public Laws 1919, ch. 189; Public Laws 1921, ch. 2. Section 10 of the act of 1921 clothed the commission with the general supervision of all matters relating to the construction of the highways of the State, including the execution of contracts, the selection of the materials to be used, the control for the benefit of the State of any existing county or township roads, the regulation of the use of the roads and of the police traffic thereon, responsibility for the maintenance of all highways other than streets in towns and cities, and other enumerated powers. The commission was not incorporated with the right to sue and to be sued, but was manifestly established as an agency of the State for the purpose of exercising administrative and governmental functions.

The principle is firmly established that a State cannot be sued in its own courts or elsewhere unless it has expressly consented to such suit, except in cases authorized by Article XI of the Constitution of the United States, or by some provision in the State Constitution represented, for example, by Article IV, section 9, of the Constitution of North Carolina. In Beers v. Arkansas, 20 Howard, 527, Chief Justice Taney said: "It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks

proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it." *U. S. v. Clark,* 8 Pet., 436; *U. S. v. Eckford,* 6 Wall., 484; *R. R. Co. v. Tenn.,* 101 U. S., 337; *U. S. v. Lee,* 106 U. S., 196; *Moody v. State Prison,* 128 N. C., 12; *Jones v. Comrs.,* 130 N. C., 452.

It is true that a suit against the officials of a State is not necessarily a suit against the State, for the nature of the action must be determined by the substance of the relief sought. *Ins. Co. v. Herriott,* 91 Fed., 715; *Bain v. State,* 86 N. C., 49. But where a suit is prosecuted against an officer or agent who represents the State in action and liability, and the State is the real party whose action would be controlled by the judgment and against which relief is sought, the action is in effect a suit against the State. *North Carolina v. Temple,* 134 U. S., 22; *Louisiana v. Steele,* 134 U. S., 230; *Smith v. Reeves,* 178 U. S., 436.

The plaintiff insists, even if these propositions be conceded, that the original jurisdiction of the Supreme Court conferred by Article IV, section 9, of the State Constitution is not to be exercised if by the ordinary process of the law a plaintiff can regularly constitute his case in court and obtain relief against the defendant (*Bain v. State,* 86 N. C., 50), and that the instant action can be maintained on two distinct grounds: (1) that authority for the commission to sue and to be sued is implied from the character and purpose of the legislation by which it was established; and (2) that the action was instituted for the recovery of damages caused by the negligence of the officers or agents of the State and not as a suit against the State.

As to the first ground, we understand the plaintiff to admit, in accordance with the decisions, that the power to sue and to be sued given under C. S., 1126, applies only to private and *quasi*-public corporations, and not to the governmental agencies of the State. *Moody v. State Prison, supra.* Besides this, the mere right to sue and to be sued, even if expressly granted the commission, would not destroy the public policy on which immunity from a suit in tort is made to rest. In *Moody's case, supra,* it is said: "But even if such authority was given, it would cover only actions ordinarily incidental in its operation, and would not extend to causes of action like the present. There is a distinct difference between conferring suability as to 'debts and other liabilities for which the State Prison is now liable,' and extending liability for causes not heretofore recognized. *Grate Co. v. Commonwealth,* 152 Mass., 28. 'The exemption of the State from paying damages for accidents of this

nature does not depend upon its immunity from being sued without its consent, but rests upon grounds of public policy, which deny its liability for such damages.' *Bourn v. Hart,* 93 Cal., 338." In *Jones v. Comrs., supra,* it was held that counties, as instrumentalities of the State, are not liable in damages in the absence of a statutory provision giving a cause of action against them, and even if such authority were given it would not extend to causes of action in tort. The cases cited by the plaintiff are not in conflict with these decisions. In *Ellis v. N. C. Institution,* 68 N. C., 424, the action was based on a contract which was collateral or incidental to the purposes for which the institution was established. In the case of *Bain v. State, supra,* the object of which was to ascertain the facts relating to the plaintiff's interest in land occupied by the defendant, this Court held that Article IV, section 9, of the Constitution did not apply, because the plaintiff could obtain the relief sought in an ordinary action at law. And in *County Board v. State Board of Education,* 106 N. C., 83, the defendant was empowered to sue and be sued, and the action was prosecuted to enforce the performance of a ministerial duty.

As to the second ground relied on by the plaintiff, we concede the proposition that the immunity of the State from suit does not save its officers and agents from liability for a trespass committed in breach of an individual's legal rights under conditions prohibited by law, even when they act or assume to act by authority of the State. This doctrine is maintained in courts of the highest repute and is illustrated in numerous decisions. In *Poindexter v. Greenhow,* 114 U. S., 270, it appeared that the plaintiff owed certain taxes to the State of Virginia; that the defendant, as treasurer of the city of Richmond, was charged with the duty of collecting the tax, and made demand on the plaintiff for payment of the taxes due; that the plaintiff thereupon tendered to the defendant in payment thereof 45 cents in money and certain matured coupons issued by the State of Virginia by virtue of an act of the General Assembly; that the defendant refused to accept the coupons and money in payment of the plaintiff's tax, and levied upon and took possession of certain personal property belonging to the plaintiff for the purpose of selling the same to pay the taxes; and that the plaintiff then brought his action in detinue for the recovery of the property levied on by the defendant. The defendant objected that the suit could not be maintained because it was substantially a suit against the State of Virginia, to which it had not assented, and that the defendant acted only in an official capacity and was guilty of no personal wrong. In deciding the question, *Mr. Justice Matthews* said: "A defendant, sued as a wrongdoer, who seeks to substitute the State in his place, or to justify by the authority of the State, or to defend on the ground that

the State has adopted his act and exonerated him, cannot rest on the bare assertion of his defense. He is bound to establish it. The State is a political corporate body, can act only through agents, and can command only by laws. It is necessary, therefore, for such a defendant, in order to complete his defense, to produce a law of the State which constitutes his commission as its agent, and a warrant for his act. This the defendant in the present case undertook to do. He relied on the act of 26 January, 1882, requiring him to collect taxes in gold, silver, United States Treasury notes, national bank currency, and nothing else, and thus forbidding his receipt of coupons in lieu of money. That, it is true, is a legislative act of the Government of Virginia, but it is not a law of the State of Virginia. The State has passed no such law, for it cannot; and what it cannot do, it certainly, in contemplation of law, has not done. The Constitution of the United States and its own contract, both irrepealable by any act on its part, are the law of Virginia; and that law made it the duty of the defendant to receive the coupons tendered in payment of taxes, and declared every step to enforce the tax thereafter taken to be without warrant of law, and therefore a wrong. He stands, then, stripped of his official character, and confessing a personal violation of the plaintiff's rights, for which he must personally answer, he is without defense."

This principle is sustained in *Scott v. Donald,* 165 U. S., 58; *Elmore v. Fields,* 153 Ala., 345; *Burroughs v. Commonwealth,* 224 Mass., 28. In *Hopkin v. Clemson College,* 221 U. S., 636, on which the plaintiff chiefly relies, the facts were that the defendant maintained an embankment on the eastern side of the Seneca River to protect its lands from overflow, but its construction narrowed the channel of the river and caused the current of the stream to flow across the banks of the plaintiff's lands, causing injury. The appeal raised the question whether a public corporation can avail itself of the State's immunity from suit in a proceeding against it for so managing the land of the State as to damage or take private property without due process of law. The college was not acting in a governmental capacity. In reference to the question, the Court said: "Again, and still treating the question as though involved in the plea to the jurisdiction, that is not an action against the college for a tort committed in the prosecution of any governmental function. The fee was in the State, but the corporation, as equitable owner, was in the possession, use, and enjoyment of the property. For protecting the bottom land, the college, for its own corporate purposes and advantages, constructed the dyke. In so doing it was not acting in any governmental capacity." With respect to the question of liability, there is a well defined distinction between institutions which are regarded as ministerial agencies of the government and

those which exercise political or governmental functions like counties, municipalities, or commissions created for the construction and maintenance of the public highways. . The duties of such governmental institutions are more than ministerial. The apposite principle is this: If an action cannot be prosecuted against its officers or agents when the State is the real and only party in interest, it is equally true as a general proposition that a State cannot be held liable for torts committed by its officers or agents in the discharge of their official duties unless it has voluntarily assumed such liability. And the test by which the question of the individual liability of an official or agent of the State for tortious personal injury is to be determined has been stated in our decisions. For the negligent breach of a public duty administrative, ministerial, and imposed entirely for the public benefit a public officer may not be held individually liable to a person who has been injured by his negligence, unless the statute creating the office or imposing the duties makes provision for such liability; and where his powers involve the exercise of judgment or discretion he is not liable to any private person for neglect to exercise such powers nor for the consequence of the lawful exercise of them if he keeps within the scope of his authority and acts without malice or corruption. *Hipp v. Farrell,* 169 N. C., 552; *S. c.,* 173 N. C., 169; *Snider v. High Point,* 168 N. C., 608.

We have referred to the doctrine of the individual liability of a public officer or agent because the questions relating to it were discussed in the argument here, but it should be noted that the members of the Highway Commission are not sued as individuals. The plaintiff caused the summons to be served only on the chairman, and seems to have dealt with the commission as if it were a corporation. If the demurrer be treated as a general appearance, such appearance was limited and confined to the capacity in which the commission was sued.

The judgment sustaining the demurrer is
Affirmed.